PAGE *v.* CITIZENS BANKING COMPANY *et al.*

1. A partnership is liable as such in an action for malicious prosecution,
when the same was instituted in furtherance of the partnership's inter-
ests and by direct authority of its members.
2. A partnership, the individual members thereof, and a person not a mem-
ber may be joined as defendants in an action for a malicious prosecution,

if it was instituted as the result of a confederation and conspiracy among them to begin and carry it on.

3. The petition in such an action may appropriately set forth facts showing that the institution of the prosecution was in furtherance of the partnership's interests and setting forth the transactions out of which the prosecution arose.

4. It is " carrying on" a prosecution to cause a warrant to be issued, having the defendant therein arrested and his goods seized, having him brought before a committing magistrate, procuring continuances of the preliminary hearing, and requiring him to give bond for his appearance before the committing magistrate, notwithstanding the prosecution was finally abandoned in the committing court.

5. Abandoning the prosecution before the committing magistrate, and procuring him to grant an order dismissing the warrant and discharging the accused on the ground that the prosecutor had no evidence whatever to offer against him, amounts to a termination of the prosecution, when no further action thereon is taken.

6. A partnership may be sued as such in an action for a malicious arrest, when the process under which the arrest was made was sued out in the interest of the partnership and under the direction of the persons composing the same.

7. An imprisonment resulting from an arrest under a valid warrant will not give a right of action for false imprisonment.

8. In dealing with demurrers or other objections to pleadings, the judge should first dispose of demurrers to petitions; and where as a result a petition is dismissed, it is not proper practice at the same term of the court to deal with demurrers to an answer to such petition.

9. The counts in the petition for malicious prosecution and malicious arrest set forth causes of action, and were not subject to the demurrers filed thereto. The count for false imprisonment did not set forth a cause of action. Direction is given that the case be reinstated as to the two counts first mentioned.

Argued May 23,—Decided June 6, 1900.

Action for malicious prosecution. Before Judge Smith. Dodge superior court. November term, 1899.

*DeLacy & Bishop*, for plaintiff.
*Roberts & Milner* and *W. M. Clements*, for defendants.

Cobb, J. Page brought suit against Ashburn, Peacock, Edwards, Lietch, Williams, Rogers, and the Citizens Banking Company of Eatonton, which was alleged to be a partnership composed of the five persons first above named. The petition contained three counts, one for malicious prosecution, one for malicious arrest, and one for false imprisonment. The facts alleged in each of the counts were, in substance, as follows: Rogers was the sheriff of the county, and as such had levied a mortgage exe-

cution in favor of the Citizens Banking Company against petitioner upon a certain stock of goods, which was in the possession of the sheriff under the levy at the former place of business of petitioner. Lietch and Rogers united in making an affidavit that "thirty-one suits of men's clothing have recently been taken from the storehouse occupied by J. D. Page and held in custody of J. C. Rogers, sheriff of Dodge county, Georgia, under levy of a mortgage fi. fa., and now occupied by W. H. Clements, and the same has been taken by criminal means and carried away, and that they believe and have probable cause to believe that the said property is now concealed in the dwelling and premises occupied by J. D. Page, located on College street, in the town of Eastman." On this affidavit a warrant was issued, directing that the house and premises of Page be searched, and, if the property described in the affidavit be found therein, that he be arrested and, together with the property so found, brought before some judicial officer, to be dealt with as the law directs. It was distinctly alleged in the petition that when Lietch and Rogers made this affidavit they were acting for themselves, as well as for the Citizens Banking Company, and with the approval and by the direction of each member of that partnership. The warrant issued on this affidavit was placed in the hands of the town marshal and county bailiff, and the house and premises of petitioner were thoroughly searched. None of the property described in the affidavit was found therein, but the officer seized three pieces of dress flannel and two suits of children's clothes, and arrested petitioner. Subsequently to the arrest, the bailiff, with other persons, returned and made another search of the premises, but found none of the property described in the affidavit. Petitioner was taken before a justice of the peace, when Lietch, Edwards, and Williams, acting for themselves and for the other members of the firm, appeared to prosecute plaintiff, with an attorney who was employed by the Citizens Banking Company as a partnership and each and all of the members of the same. In pursuance of that employment such attorney did represent the prosecution against the plaintiff from its inception to its termination. Petitioner asked that he be released from custody, on the ground that the affidavit upon which the warrant was issued was defective and void and

failed to charge any offense against him, and that for that reason his arrest and detention were unlawful. Lietch, Edwards, and Williams objected to the release of petitioner, and the magistrate refused to order his discharge. He then asked for an immediate investigation or preliminary trial, but the parties just referred to objected to this, and upon their application the hearing was continued to the next day. To avoid being placed in jail, petitioner offered to give a bond for his appearance, but the magistrate held that a bond must be given to appear and answer for the offense of larceny, and petitioner gave the bond to appear for a preliminary hearing on the next day for the offense of larceny.

At the time fixed for the preliminary trial, Rogers, Lietch, Edwards, and Williams, acting for themselves and with the approval of Ashburn and Peacock, the other members of the partnership, again appeared with their attorney before the magistrate for the purpose of prosecuting petitioner, and on their motion the case was again continued until the following day, over the objection of petitioner, who was present and demanding a hearing. At the time fixed in this last order of postponement, petitioner appeared with his counsel before the magistrate, and thereupon the prosecution, by their attorney, asked leave of the court to withdraw the warrant and to restore to petitioner the articles which had been seized by the officer who searched his house; the attorney representing the prosecution stating that it was impossible to make out a case. An order was then granted, discharging petitioner from custody, and restoring to him the articles which had been seized. It was distinctly alleged that while Rogers and Lietch, the persons upon whose affidavit the warrant was issued, were the nominal prosecutors of petitioner, Ashburn, Edwards, Williams, and Peacock, and the Citizens Banking Company as a partnership, were all jointly and severally the prosecutors in the case. Petitioner alleges that he was innocent of any offense, and that he did not take and carry away any of the articles named in the affidavit, nor were any of them concealed in his dwelling or about his premises, and that the prosecutors had no probable cause whatever to believe that the same were so concealed; that the articles seized by the officer constituted no part of the property mentioned in the af-

fidavit, but were the property of petitioner, his wife and children, and had never been in the possession or custody of Rogers. Petitioner was in actual custody of the arresting officers for several hours, and was in their constructive custody for forty-three hours before he was released. It is alleged that the prosecution was maliciously instituted and carried on without probable cause, the prosecutors having no ground whatever for the proceeding, other than their desire to injure petitioner. As matter of aggravation and as evidence of malice, it is alleged that the defendants circulated disparaging and damaging reports about petitioner, charging that large quantities of goods stolen from the custody of the sheriff had been found by the officers in the house of petitioner, that he had a secret key to the store in which such goods were located, and that he had taken such goods.

To this petition the defendants filed demurrers, both general and special. The court sustained the demurrers and dismissed the petition, and this ruling is assigned as error. The plaintiff, during the progress of the hearing of the demurrers, offered an amendment to his petition, which merely set forth with greater particularity than the original petition the facts showing the connection of the Citizens Banking Company with the mortgage execution which had been levied upon the property of petitioner, and prayed that, if it should be held that the suit could not be maintained against the Citizens Banking Company as a partnership, the case might be held in court as a suit against Rogers and the individual members of that partnership. The court refused to allow this amendment, and this ruling is also assigned as error.

1. Is a partnership ever liable as such in an action for a malicious prosecution? If so, under what circumstances can such an action be maintained? One partner may be rendered liable for the acts of his copartner. Whether or not he is so liable is to be determined by the application of the rules governing the relation of principal and agent; and generally the partnership is liable for the act of one of the partners if it would have been liable had the same act been committed by an agent intrusted by the firm with the management of its business. 17 Am. & Eng. Enc. L. (1st ed.) 1066. If a tort be committed by one partner while engaged in a transaction within the scope

of the partnership business, and such tort be committed in furtherance of the interests of the partnership, it will be liable. But it will not be liable for a tort committed by one partner in a transaction outside of the partnership business, where he acts from his own private malice or ill will, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them, the act itself having been done in their behalf and interest. Mechem, El. Part. §§ 204, 205; Parsons, Part. (4th ed.) §§ 100, 102; 1 Bates, Part. § 461; 1 Lindley, Part. §§ 149, 150; 1 Jag. Torts, § 99; Barbour, Part. to Ac. (2d ed.) ch. 2, § 13, top p. 350. The authorities just cited establish simply that as a partnership is an aggregation of individuals, where each one is the authorized agent of the others to perform any act within the scope of the partnership enterprise, if one of them in the prosecution of the business of the partnership be guilty of a wilful wrong toward another, the other partners will be liable; and that if one partner is guilty of an act outside of the partnership business, which causes an injury, the other partners will not be liable unless it appear that such act was expressly authorized by them, or after the same had been performed in their behalf and interest they had either expressly ratified the same or knowingly received the fruits of the wrongful act. Applying these principles to the present case, the petition set forth a cause of action as against the individuals who compose the partnership known as the Citizens Banking Company, and the plaintiff has a right to maintain the action, so far as the count for malicious prosecution is concerned, against the individuals composing that partnership. But the suit is not only against the individuals; it is against the partnership itself, and a judgment is sought against the partnership itself as well as against the individual members who compose it. It is well settled that a corporation is liable for torts committed by its agents, such as assault and battery, libel, malicious prosecution, and the like. *Behre* v. *National Cash Register Company*, 100 *Ga.* 213; 1 Lawson's Rights & Rem. § 367; Newell, Mal. Pros. § 102; *Columbus & Rome Ry. Co.* v. *Christian*, 97 *Ga.* 56; *Ga. R. R. & Bank. Co.* v. *Richmond*, 98 *Ga.* 495. Whether a partnership can be sued as such and held liable for a tort in the commission of which

all of the members united for the purpose of furthering the interests of the partnership, or whether in such a case the individuals only are liable to be sued, either jointly or severally, is a question which is for the first time presented to this court for decision. Can a partnership itself be regarded as being so separate and distinct from the individual members of the same that it may be treated as the wrong-doer, and a judgment be rendered against it which would bind partnership assets in the same manner that a judgment rendered against it on a contract would bind such assets?

A corporation is a person, and therefore it is clear that the decisions uniformly holding that it may be rendered liable for a tort committed by its agent are undoubtedly sound. "Though a firm or partnership is not a person, it is a legal entity, and, for some purposes, is recognized as a quasi person having powers and functions exercisible by one of the partners severally or all of them jointly." *Drucker* v. *Wellhouse*, 82 *Ga.* 129. In the opinion in the case just cited Mr. Chief Justice Bleckley says: "A firm adds nothing to population, and in this respect is unlike a corporation, which augments population in the legal, though not in the natural world. Still, the law does take note, on a wide scale, of partnership as a legal entity, and regards it as a unit both of rights and obligations. Judgment may be entered and execution issue for or against it. Code, §§ 1899, 3576. [Civil Code, §§ 2638, 5346.] Attachment may issue against it as non-resident, *Chambers vs. Sloan*, 19 *Ga.* 84; *DeLeon vs. Heller*, 77 *Ga.* 740; or as absconding, *Hines vs. Kimball & Co.*, 47 *Ga.* 587. It may be served with process, *Peel vs. Bryson*, 72 *Ga.* 332. It may be taxed, *The Mayor vs. Hines*, 53 *Ga.* 616; and see many provisions in the session laws imposing taxes. It may be insolvent, Code, § 1918 [Civil Code, § 2660]; *Bennett vs. Woolfolk*, 15 *Ga.* 213; *Daniel vs. Townsend*, 21 *Ga.* 155; *Pullen vs. Whitfield*, 55 *Ga.* 174; *Anderson vs. Pollard*, 62 *Ga.* 51. It may assign its property to pay its creditors, but whether by general law a single partner can make for it a general assignment seems open to question. Bur. on Ass. § 67 *et seq.*; Story Par. §§ 101, 310; Parsons Par. 165, 166, 400. As to restrictions on limited partnerships in the matter of assignments, see Code, §§ 1939, 1940 [Civil Code,

§§ 2681, 2682]. According to Parsons (Partnership, 449), there is a 'general tendency of the law at this day to complete its recognition of a partnership as a body of itself, with its own means appointed to its own debts.' In view of this tendency, which is everywhere traceable, and no less in our own local system than elsewhere, we may safely hold that though a firm or partnership is impersonal or non-personal, it is, for some purposes, in contemplation of law a *quasi* person, having powers and functions exercisible by one of the partners severally or all of them jointly. That it may be a debtor or a creditor within the meaning of modern statutory enactments, we have no question." In that case it was held that an insolvent firm might make an assignment as an insolvent debtor, though the partners themselves as individuals might be solvent. See also *Green* v. *Willingham*, 100 *Ga.* 224. If a partnership may be considered as an entity so as to be subjected to suit as such in the cases referred to in the decision from which the above quotation is made, we do not see why upon principle a partnership might not be treated as an entity and suable as such by one who had been the subject of a wrong committed by the concurrent action of all the members of the partnership, in the prosecution of a transaction instituted and carried on for the purpose of punishing one who was charged with despoiling the partnership of its property as well as for the purpose of recovering property which was owned by the partnership. Such is the case made by that count in the petition which seeks damages for the malicious prosecution which it is distinctly alleged was instituted and carried on by the direct authority of each and every member of the partnership acting both in their individual capacities and as members of the firm.

It has been held that if one partner maliciously prosecutes a person for stealing partnership property, the firm is not answerable, unless all the members are in fact privy to the malicious prosecution. Arbuckle *v.* Taylor, 3 Dowl. 160, cited in Newell on Malicious Prosecution, § 103. It would seem to follow from this ruling, that if all of the members united in instituting and carrying on the prosecution, the firm would be answerable; and such are the allegations in the present case. In nearly all of the cases where it is sought to hold the partnership liable for a

tort, upon examination of the facts it will be found that the suit was not against the partnership as such, but was against one or more members thereof sued severally or jointly, as the case may be. See Durant v. Rogers, 87 Ill. 508; Rosenkranz v. Barker, 3 N. E. (Ill.) 93; Farrell v. Friedlander, 18 N. Y. Supp. 215; United States v. Thomason, 4 Bissell, 99. In some of the cases just cited it was ruled that under the facts of the case the partnership was liable, and in others that it was not. Attention is called to them for the purpose, as above indicated, of showing that they are not authority either way on the proposition as to whether a partnership can be sued as such for a tort. In Schwabacker v. Riddle, 84 Ill. 517, it was held: "Partners are liable in solido for the torts of one, if committed by him as a partner and in the course of the business of the partnership." A ruling in almost identical language was made in McIlroy v. Adams, 32 Ark. 315. Upon examination of these cases it will be found that the suit in each instance was against the individuals and not against the partnership. In the Matter of Ketchum and others, Bankrupts, 1 Fed. Rep. 815, it was held that a firm was liable if one of its members converted to the use of the firm the property of another, and that it was immaterial whether the other members of the firm were ignorant of the wrong or innocent of any wrongful intent. There was in that case, however, no ruling as to how a suit for such wrongful conversion should be brought, whether against the partnership as such or against the individuals composing the same. The only cases to which our attention has been called in which the partnership as such was sued for a tort are the cases of Mark v. Hastings, 13 So. Rep. (Ala.) 297, and Kirk v. Garrett, 84 Md. 383. In the former it was held: "A partner is not liable for a malicious prosecution instituted by his copartner on a charge of larceny of partnership property, unless he advises or directs it, or participates therein, and then only in his individual capacity." In the latter case it was held that under the facts of that case the firm was not liable, but the judge who wrote the opinion recognized that there were cases in which it might be held liable for the torts of its members. See page 410. While the prosecution of a person for a criminal offense might not be within the scope of a mercantile partnership, even though such offense consisted

6

of a larceny of the partnership property, as was held in the Alabama case, supra, still it would seem that any proceeding authorized by law for the purpose of reclaiming property of the partnership which had been stolen would be within the scope of the partnership business, and each partner would be authorized to use such remedies as the law gave for that purpose; and if these remedies were pursued maliciously and without probable cause and a prosecution for a public offense resulted therefrom, the partnership as such would be liable in an action of malicious prosecution. But be this as it may, it is not necessary for us to decide this question in the present case, for the allegations of the petition are clear and distinct that every act that was done by the partner who sued out the search warrant was authorized and directed by each and every other member of the firm acting in behalf of the partnership. Treating the partnership as a legal entity and as a quasi person, as we are not only authorized but bound to do, following the decision in *Drucker* v. *Wellhouse*, supra, we have no hesitancy in holding that under the allegations of the petition an action for malicious prosecution was maintainable against the Citizens Banking Company as a partnership, and that the plaintiff is entitled under his allegations to recover a judgment which will bind partnership assets.

While the decision in the case of *Ozborn* v. *Woolworth*, 106 *Ga*. 459, is apparently in conflict with what is now ruled, upon a close examination of that case it will be found that it was upon its facts correctly decided, and when it is thus confined it is not only not in conflict with the present ruling but is rather in line therewith. In that case it was sought to hold a partnership liable for slanderous words uttered by one of the partners, upon two grounds: first, because the words were uttered in a transaction within the scope of the partnership business; and second, that the other partner after the slanderous words were uttered had ratified the same. It was properly held that the partnership was not liable upon either ground. If a corporation is not liable for a slander uttered by its agent, although in a transaction within the scope of his agency, unless the corporation directed the speaking of the very words complained of, as was held in *Behre* v. *National Cash Register Com-*

*pany,* 100 *Ga.* 213, it would seem upon principle that a part-
nership would not be liable for a slander uttered by one of its
agents, even though that agent be a member of the firm, unless all
the partners directed the speaking of the very words complained
of. The action was therefore not maintainable upon the first
ground. While one may render himself liable by ratifying the
tort of another, such liability arises only where the original act
was done in the interest and intended to further some purpose
of the person who ratifies the act of the wrong-doer; as in a
case where property of which the ratifier is the owner is seized
and thus passes into the possession of the real owner, or where
one in behalf of another, without authority, seizes property in
which the other has no interest, and the person in whose inter-
est the seizure was made receives the property thus seized. See
Cooley on Torts (2d ed.), 146. It is hard to conceive how this
principle can apply to a slander. Uttering without authority
a slander in the interest of another, and approving or ratifying
such slander for the reason it was so uttered or because of a ben-
efit supposed to arise from the wrongful act, are transactions
which if at all possible are beyond legal comprehension. Even
if a slander can in contemplation of law, be uttered without
authority in the interest of another, or if a benefit can be re-
ceived from a slander uttered in one's behalf, such interest or
benefit would generally, if not in every case, be so remote that
a legal investigation should not be entered into for the purpose
of connecting the interest or benefit with the slander. The
headnote and the language of Presiding Justice Lumpkin in the
opinion in *Ozborn* v. *Woolworth,* must be taken in the light of the
questions then under consideration, and there was nothing in
that case to call for a ruling on the question whether a partner-
ship would be liable for a tort committed by one of its members
under the direction and express authority of all the members.

2. As it was distinctly alleged in the petition that the part-
nership, the individual members thereof, and Rogers, the sheriff,
confederated and conspired together for the purpose of injuring
the plaintiff in instituting and carrying on the prosecution
which was the foundation of the action, there was no merit in
a demurrer that there was a misjoinder of parties defendant.
*Cheney* v. *Powell,* 88 *Ga.* 629, 634.

3. It was not only proper but in the present case it was necessary, so far as the liability of the partnership was concerned, that the plaintiff should allege that the prosecution was instituted and carried on in furtherance of the partnership's interests, and it was therefore proper that the plaintiff should allege exactly in what way the partnership was involved in the matter which was the foundation of the prosecution. Those portions of the original petition relating to the manner in which the partnership was interested in the prosecution were not subject to the special demurrers filed to the same, and the amendment which was rejected should have been allowed in so far as it related to this matter.

4. Before a criminal prosecution will give rise to a cause of action in favor of the person prosecuted against the prosecutor, it must not only appear that the prosecution was without probable cause and that damage ensued therefrom, but it must also appear that the prosecution was maliciously carried on. In *Swift* v. *Witchard*, 103 *Ga.* 193, it was held that before a criminal prosecution will be actionable there must at least have been an arrest and an inquiry before a committing court. The code declares that an inquiry before a committing court or justice of the peace amounts to a prosecution. Civil Code, § 3849. Where a search warrant is issued and under authority of the same the premises of the person named therein are searched and goods seized which are not described in the affidavit, and the person named therein is arrested and carried before a justice of the peace, and after the prosecutor is allowed a reasonable time to secure evidence he fails to do so, and in open court announces that the prosecution can not make out a case of larceny or receiving stolen goods against the person arrested, and asks that an order be entered discharging the accused from custody and restoring to him the property wrongfully seized, a prosecution has been "carried on" within the meaning of the statute, and, if the same is malicious and without probable cause, will give the person prosecuted a right of action against those who instituted and carried it on. Especially would this be true where the hearing was continued from day to day, and pending the same the accused was compelled, in order to obtain his

liberty, to give a bond for his appearance before the magistrate to answer the charge of larceny.

5. The code provides that the prosecution must be ended before the right of action accrues.   Civil Code, § 3850.   When the attorney representing the prosecution announced in open court that they had no evidence to offer against the accused, and procured an order dismissing the warrant and discharging the accused from custody, and no further action was ever taken thereon, the prosecution was at an end within the meaning of the law. See, in this connection, *Woodruff* v. *Woodruff*, 22 *Ga.* 237; *Horn* v. *Sims*, 92 Ga. 421.   The ruling in *Hartshorn* v. *Smith*, 104 *Ga.* 235, does not conflict with this.   It was there held that, though one arrested upon a criminal warrant be discharged, the prosecution would not be at an end if the prosecutor with due diligence follow up and carry on the prosecution in a court having jurisdiction to try the case upon its merits; this, in effect, being a continuation of the criminal prosecution.   In the present case no further action was taken by the prosecutors after the warrant was dismissed by the magistrate.

6. If a partnership is liable to be sued as such for a malicious prosecution, it will also be liable to be sued in the same manner under similar circumstances for a malicious arrest, as the two causes of action are of a kindred nature.   Causes of action for malicious prosecution, malicious arrest, and false imprisonment, all sounding in tort, may be joined in the same action when the plaintiff and defendants in each cause of action thus joined are identical.   Civil Code, § 4944.

7. The warrant upon which the accused was arrested was neither defective nor void.   The affidavit complied with the law which declares that a search warrant shall not issue except upon probable cause, supported by oath, particularly describing the place or places to be searched and the person or things to be seized.   Penal Code, § 1243 et seq.   Such being the case, the imprisonment resulting from an arrest under a warrant thus issued was not a false imprisonment.   In *Joiner* v. *Ocean Steamship Company*, 86 *Ga.* 238, it was held that " where a warrant is regularly and properly sued out, and the prisoner has been properly and legally arrested under it, the imprisonment can not be false."   In the opinion Mr. Justice Blandford

says: "Where the arrest is by valid process regularly sued out, action for malicious prosecution is the only remedy;" citing *Melson* v. *Dickson*, 63 *Ga.* 682; *Riley* v. *Johnson*, 13 *Ga.* 260; *Sewell* v. *State*, 61 *Ga.* 496. "It is a rule of law in this connection which admits of no exception, that where there is an arrest on a valid warrant—one neither void nor voidable,—it is not a false imprisonment, and no liability is incurred by any person whomsoever, whether immediately or only remotely connected therewith. And the rule applies, no matter how corrupt or unfounded or mistaken the motives which induced the issuance or execution of the warrant may have been." 12 Am. & Eng. Enc. L. (2d ed.) 739, 740, and cases there cited. The ruling in the 86 *Ga.*, supra, does not in any manner conflict with the decision in *Thorpe* v. *Wray*, 68 *Ga.* 359. While the headnote in the latter case says that the unlawful detention of another, though under a warrant, will give a right of action, if done in bad faith, an examination of the facts of the case and the opinion will show that the decision was placed upon the distinct ground that the warrant was void. Even in a case where the warrant is defective or void, the imprisonment thereunder would not give rise to an action for false imprisonment, if the party suing out the warrant acted in good faith, and the officer executing the same acted in like manner. Civil Code, § 3852. The court below committed no error in sustaining the demurrer to the petition so far as the count which claimed damages for false imprisonment was concerned.

8. Error is assigned in the bill of exceptions upon the refusal of the court to strike the answer of the defendants. No ruling will be now made on the question as to whether the answer set up a sufficient defense to the action. If the court below passed upon this question at all, it was in an irregular way. It must have passed on the question either before considering the demurrers to the petition, which would have been irregular, or he must have heard demurrers to the answer after the petition was dismissed, which would have been without authority. When the petition was dismissed the whole case went out, and there was nothing left to answer. In either view, the question is not properly before this court for decision. The proper practice, where there are demurrers filed to both the petition and

the answer, is to first consider the demurrer to the petition ; if this is sustained, the demurrer to the answer need not be considered. Direction will be given that all questions relating to the sufficiency of the answer be left open until another hearing.

9. The court erred in sustaining the demurrers so far as the counts for malicious prosecution and malicious arrest were concerned. These counts were not subject to any of the objections set up in the demurrers thereto, either general or special. There was no error in sustaining the demurrers to the count for false imprisonment. Direction will be given that the case be reinstated as to the counts for malicious prosecution and malicious arrest, and that the count for false imprisonment stand as stricken.

*Judgment reversed, with direction. All the Justices concurring, except Fish, J., absent.*